**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| JOSEPH SMITH, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:14-CV-665 |
| | § | |
| HONEYWELL INTERNATIONAL, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

On June 5, 2015, the Court held a hearing to determine the proper construction of the disputed claim terms in United States Patent No. 6,611,686 ("the '686 Patent"). After considering the arguments made by the parties at the hearing and in the parties' claim construction briefing (Dkt. Nos. 39, 44 & 45), the Court issues this Claim Construction Memorandum and Order.

# TABLE OF CONTENTS

I.      BACKGROUND ................................................................................................... 3

II.     APPLICABLE LAW ........................................................................................... 6

III.    CONSTRUCTION OF AGREED TERMS ...................................................... 9

IV.     CONSTRUCTION OF DISPUTED TERMS .................................................. 9

       1.   "selectable port wiring interface for selective wiring," "selective wiring of said plurality of ports," "selective wiring of said selectable port" ....................... 9

       2.   "said inputs to be controlled" .................................................................... 19

       3.   "inputs to said wireless communication unit are operable for monitoring" and "inputs to be monitored" ............................................................................ 35

       4.   "outputs for said wireless communication unit are operable to be controlled" and "outputs to be controlled" ............................................................................. 42

       5.   "definition information," "definitions of said one or more inputs to be controlled, said one or more outputs to be controlled, and said selective wiring of said selectable port wiring interface," and "definitions of said inputs to be monitored, said outputs to be controlled, and said selective wiring of said selective wiring of said plurality of ports" ........................................................... 49

V.      CONCLUSION .................................................................................................... 55

## I.    BACKGROUND

The '686 Patent is titled "Tracking Control and Logistics System and Method." It was filed on May 24, 1999, and issued on August 26, 2003. On May 27, 2008, a third party requested an *Ex Parte* Reexamination of the '686 Patent, and the reexamination proceeding was assigned Control No. 90/009,121 ("the '121 proceeding"). On September 3, 2009, a third party requested a second *Ex Parte* Reexamination of the '686 Patent, and the reexamination proceeding was assigned Control No. 90/010,601 ("the '601 proceeding"). The United States Patent and Trademark Office ("USPTO") merged the '121 proceeding and the '601 proceeding on May 25, 2010. On March 15, 2011, the USPTO issued an *Ex Parte* Reexamination Certificate, which canceled claims 4, 18, 19, 21, 33–35, 37–39 and 42; amended claims 1, 3, 5, 6, 7, 11, 12, 15, 16, 20, 22–24, 26, 27–29, 36, 40, 44 and 45; and added new claims 46–51.

The '686 Patent generally relates to a method and system used for monitoring, tracking, and logistics purposes that preferably includes a monitoring unit having a microcontroller for processing data.[1] As background, the '686 Patent states that "it is expensive and difficult to

---

[1] The Abstract of the '686 Patent follows:

> A system, apparatus, and method are disclosed for monitoring, tracking, and logistics purposes that preferably includes a monitoring unit wherein data is processed using a microcontroller. The monitoring unit includes an interface with the target or asset to be tracked such that electrical signals may be sent between the target and monitoring unit to denote events from the target, e.g., air bag deployment and for activating features of the target, e.g., an alarm. The interface may be unique for each monitoring unit because unique information relating to each interface is stored in the system database, e.g., data may be related to a temperature in one unit and to a movement sensor indication in another. Therefore, the system may respond appropriately to signals having unique meanings from each different monitoring unit. A pager unit with a pager modem is controlled by the microcontroller to thereby encode the signals for transmission. A pager transmitter/receiver network is used for sending and receiving messages from the monitoring unit. The pager transmitter/receiver network is in communication with a server and the database. The server may be accessed by multiple clients over the Internet or other lines of communication so that the clients at numerous different remote locations may activate controls on their respective one or more remote targets/assets, find the locations thereof, and

monitor moveable assets such as cargo, vehicles, trucks, cargo containers, and the like." '686 Patent at 1:15–18. The specification further states that "[i]t would be desirable to provide a low cost, reliable device with the ability to locate assets anywhere and anytime," by enabling communication "between the asset and a central control center using any type of required data or information." *Id.* at 1:18–19. The specification asserts that "[t]he present invention provides a device which costs a fraction of presently available devices and also operates at a fraction of the cost of presently available services that allow for monitoring, controlling, and logistics." *Id.* at 1:66–2:2.

Specifically, the specification states that "one preferred embodiment of the monitoring device for monitoring a target comprises a microcontroller programmed for operating the monitoring device." *Id.* at 2:8–10. The specification adds that "[a] pager controlled by the microcontroller is operable for communicating with a pager network." *Id.* at 2:10–12. The specification further states that "[a] global positioning sensor is included for providing location information." *Id.* at 2:14–15. The specification also states that "[a]n interface is provided between the monitoring device and the target for communicating signals relating to the target." *Id.* at 2:15–17.

Regarding the interface, the specification states that it connects inputs, outputs, and status signals to monitoring device preferably via cabling. *Id.* at 6:60–62. The specification also states that "inputs for any particular monitoring device 10 may be different, e.g., if there are one thousand monitoring devices 10 in operation, each device may be configured differently." *Id.* at 7:1–4. According to the specification, "[t]he flexibility comes because during initialization of monitoring device 10, the various inputs 42 and outputs 44 are listed and entered into a database of system 100 where they are defined along with any desired response that a client may wish

receive cumulative status reports.

system 100 to make, e.g., e-mail, telephone call, pager alarm, etc." *Id.* at 7:4–8. The specification adds that "[i]nputs to monitoring device 10 for use with a vehicle may include, for example only, a panic button, air bag deployment, siren, lights, auxiliary signals, cargo door sensor (open/close), or a threshold indicator such as cargo temperature exceeds a threshold." *Id.* at 7:8–13.

The specification further states that "monitoring device 10 may be used to produce outputs such as door locks, ignition kill, to produce an audible alarm for the driver, or to effect any other feature that can be electrically interfaced to monitoring device 10." *Id.* at 7:46–49. The specification adds that "system 100 can remotely control the outputs," and that "a client who logs onto system 100 through the Internet, and who may be in another country, can effect a desired output through monitoring device 10." *Id.* at 7:56–58.

Claim 15 of the '686 Patent is representative of the asserted claims and recites the following elements (disputed terms in italics):

15. A monitoring system for monitoring a plurality of targets on behalf of a plurality of clients, each of said clients being associated with one or more of said plurality of targets, comprising:

a computer network server operable for communicating with a plurality of client computers through an Internet connection;

a common database of said computer network server operable for storing information relating to each of said plurality of targets; a wireless network system, said computer network server being in communication with said wireless network system; [and]

a plurality of wireless communication units for said plurality of targets, each of said plurality of wireless communication units being operable for communication with said wireless network system, each of said plurality of wireless communication units including a global position sensor to provide location information for each of said plurality of targets, said computer network server permitting each of said plurality of client computers to selectively communicate only with said one or more of said plurality of targets with which said client is associated such that each of said plurality of client computers is operable for sending a message to request said location information relating to said one or more of said plurality of targets with which said client is associated;

said plurality of wireless communication units each comprising a *selectable port wiring interface for selective wiring* of each of said plurality of wireless communication units to said plurality of targets whereby one or more *inputs to said wireless communication unit are operable for monitoring by a respective of said plurality of client computers* and one or more *outputs for said wireless communication unit are operable to be controlled by said respective of said plurality of client computers* and;

said common database being configured for storing *definition information* for said plurality of wireless communication units comprising *definitions of said one or more inputs to be controlled*, said one or more *outputs to be controlled* and *said selective wiring of said selectable port wiring interface* for said plurality of wireless communication units;

a controller at said wireless communication unit for operating said wireless communication unit, said controller having a memory for programming said controller for operating said wireless communication unit; and

said plurality of wireless communication units comprising a modem for encoding said location information, said wireless network system comprising a wireless communication network system, said modem of said wireless communication unit being operable for a task, of sending messages comprising said location information through said wireless communication network system, whereupon said information is stored in said common database.

## II.    APPLICABLE LAW

### A.  Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To determine the meaning of the claims, courts start by considering the intrinsic evidence.  *See id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  The intrinsic evidence includes the claims themselves, the specification, and the prosecution history.  *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861.  Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the

entire patent.  *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms.  *Phillips*, 415 F.3d at 1314.  First, a term's context in the asserted claim can be very instructive.  *Id*.  Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent.  *Id*.  Differences among the claim terms can also assist in understanding a term's meaning.  *Id*.  For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation.  *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'"  *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope.  *Phillips*, 415 F.3d at 1316.  In these situations, the inventor's lexicography governs.  *Id*.  The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone."  *Teleflex, Inc.*, 299 F.3d at 1325.  But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'"  *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d

1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

### B.  Construction Indefiniteness

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112(b). Whether a claim meets this definiteness requirement is a matter of law. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1344 (Fed. Cir. 2007). A party challenging the definiteness of a claim must show it is invalid by clear and convincing evidence. *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1368 (Fed. Cir.2014). The

ultimate issue is whether someone working in the relevant technical field could understand the bounds of a claim. *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010). Specifically, "[a] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

### III.    CONSTRUCTION OF AGREED TERMS

The parties have agreed to the construction of the following terms:

| Claim Term/Phrase | Agreed Construction |
|---|---|
| "selectively communicate only with" | No construction necessary – ordinary meaning |
| "common database" | No construction necessary – ordinary meaning |

Dkt. No. 47-1 at 1, 9 (P.R. 4-5(d) Claim Chart of Disputed Terms). In view of the parties' agreements on the proper construction of each of the identified terms, the Court hereby **ADOPTS** the parties' agreed constructions.

### IV.    CONSTRUCTION OF DISPUTED TERMS

The parties' dispute focuses on the meaning and scope of five groups of terms/phrases in the '686 Patent.

#### 1.    "selectable port wiring interface for selective wiring," "selective wiring of said plurality of ports," "selective wiring of said selectable port"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "selectable port wiring interface for selective wiring" | "interface with the target or device on the target that is capable of selectively being configured to receive and/or transmit signals or data" | "a selectively variable wired connection of a configurable interface port chosen to establish a specific performance capability between an individually selectable chosen input and an individually selectable chosen output to control a desired action on the target" |

| "selective wiring of said selectable port wiring interface" | Plaintiff requests that the entire phrase from Claim 48 be construed, "selective wiring of said selectable port wiring interface"<br><br>"interface with the target or device on the target that is capable of selectively being configured to receive and/or transmit signals or data" | "a selectively variable wired connection of a configurable interface port chosen to establish a specific performance capability between an individually selectable chosen input and an individually selectable chosen output to control a desired action on the target" |
|---|---|---|
| "selective wiring of said plurality of ports" | "interface with the target or device on the target that is capable of selectively being configured to receive from and/or transmit signals or data" | "a selectively variable wired connection of a configurable interface port chosen to establish a specific performance capability between an individually selectable chosen input and an individually selectable chosen output to control a desired action on the target" |

### a) The Parties' Positions

Defendant contends that Plaintiff's construction eliminates physical structure recited in the claim language. Plaintiff contends that Defendant's construction add limitation to the claims. Plaintiff argues that the invention allows the client the capability of selecting from a plurality of ports or interfaces, and then selectively wiring/configuring the monitoring device and the target. (Dkt. No. 39 at 11.)[2] Plaintiff contends that the specification provides that a "preferred advantage of the present invention is that each monitor/target interface can be configured differently because all initialization information is stored in a central database" and not in each asset. (*Id.*) (citing '686 Patent at 4:48–52, 6:60–63, 7:1–4, 10:20–36).

Regarding Defendant's construction, Plaintiff argues that Defendant's phrase "a selectively variable wired connection of a configurable interface port" merely restates the claim language "selectable port wiring interface for selective wiring" or "selective wiring of said

---

[2] All references to page numbers refer to the pagination system assigned by ECF, not the original internal pagination of the document.

selectable port." (*Id.* at 12.) Plaintiff contends that Defendant's phrase, "chosen to establish a specific performance capability between an individually selectable chosen input and an individually selectable chosen output to control a desired action on the target," adds additional limitations that are not in the claims. (*Id.*) Plaintiff argues that Defendant's construction is confusing, ambiguous, and unnecessarily complex. (*Id.*) Plaintiff also argues that there is no intrinsic support for those additions. (*Id.*)

According to Plaintiff, the patent states that the user can select the interface and configure it. (*Id.*) Plaintiff argues that the claims at issue do not limit the "selectable port wiring interface" or "selectively wiring of said selectable port" to a chosen input and chosen output which must then somehow "control a desired action on the target." (*Id.* at 12-13.) Plaintiff also argues that a sensor could be attached to the communication unit and the target asset to monitor conditions on the asset, rather than to "control a desired action on the target." (*Id.* at 13.)

Defendant responds that Plaintiff's construction excises defined physical structure from the subject claim language, eliminating recited claim elements. (Dkt. No. 44 at 9.) Defendant argues that an interpretation for claims 15 and 48 that defines the stated claim language's physical structure by merely what an interface does, and not by what is actually stated, would be incorrect. (*Id.*) Defendant further argues that claim 29 does not reference an "interface," as its claim language involves "a plurality of ports." (*Id.*)

According to Defendant, Plaintiff's construction re-writes and expands each claim's scope to strip it of recited claim element physical structure. (*Id.*) Defendant argues that Plaintiff's construction redacts the required "selectable port wiring"/"selective wiring" relative to each claim's plurality of wireless communication units and substitutes an "interface" in lieu thereof. (*Id.*) Defendant further argues that Plaintiff's construction states that, though the

interface is to be "with the target or device on the target," the claims do not mention undefined "devices" or the targets having "a device" on them. (*Id.* at 9-10.) Defendant further argues that the physical structure of "selectable port wiring"/"selective wiring" relative to each claim's plurality of wireless communication units also involves expressly recited structural claim elements of "one or more inputs" and "one or more outputs." (*Id.* at 10.)

Defendant also contends that the patentee relied upon the physical selective port wiring and input and output claim element structures in order to distinguish his invention over the "Suman" reference cited in the Reexamination. (*Id.* at 10-12) (citing Dkt. 44-4 at 19-20, 31 (Oct. 20, 2010 Office Action Response), Dkt. 44-3 at 5, 23 (Dec. 13, 2010 Notice of Intent to Issue *Ex Parte* Reexamination Certificate)). According to Defendant, its construction reflects both the claims' recitation of positively recited structural claim elements and the examiner's reasons for allowance. (*Id.* at 12.)

Plaintiff replies that, after essentially restating the claim language, Defendant's construction adds limitation which are not in the claims. (Dkt. No. 45 at 4.) Plaintiff argues that Defendant's construction conflicts with the actual language in the claims. (*Id.*) According to Plaintiff, if Defendant's construction was actually substituted for the claim term it purports to define, the effected claim element would be hopelessly confusing. (*Id.* at 5.) Plaintiff further argues that Defendant's construction seems to incorrectly imply some relationship between a chosen input and chosen output. (*Id.*) Plaintiff also argues that it is not clear whether Defendant's construction recognizes the patentee's intent to provide for output control over the monitoring units and the components therein, such as the GPS, CPU, power, and so on. (*Id.*)

Plaintiff further argues that Defendant assumes that "selectable port wiring interface for selective wiring" "or "selectively wiring of said selectable port wiring interface" must be limited

to a chosen input and chosen output, which somehow always "control[s] a desired action on the target." (*Id.*)  Plaintiff contends that Defendant ignores the fact that the invention may be used to monitor the targeted asset and retrieve information. (*Id.*)

Regarding the prosecution history, Plaintiff argues that the invention was distinguished over Suman because it did not teach the use of selectable port interfaces. (*Id.* at 6) (citing Dkt. 45-2 at 19 (Oct. 20, 2010 Office Action Response)).  Plaintiff argues that, in order to make changes under Suman, each individual device would have to be recalled, reprogrammed, and potentially rewired. (Dkt. No. 45 at 6.)  Plaintiff contends that this is because Suman controls the I/O interfaces locally through the wiring and microprocessor on the target and all information for a particular device is stored locally, not centrally. (*Id.*) (citing Dkt. 45-2 at 30-33 (Oct. 20, 2010 Office Action Response)).  Plaintiff contends that this is different than the '686 Patent, which teaches that changes can be made remotely by modifying the definition information in the database. (Dkt. No. 45 at 6) (citing '686 Patent at 7:55–56).

Plaintiff further argues that Defendant's argument about structure is unclear. (*Id.*)  Plaintiff contends that the invention must have the structure to perform its intended function, but the Suman analysis is about function. (*Id.*)  Plaintiff contends that '686 Patent uses I/O interfaces and databases, which constitute structure, but the point made is that '686 Patent achieves functionality beyond the prior art because it employs interfaces that are selectable and variable. (*Id.*)  According to Plaintiff, the '686 Patent employs structure that is not found in Suman, such as a central database, but the significance is that it does so to achieve functionality, e.g., selectable and variable interfaces. (*Id.*)

For the following reasons, the Court finds that the phrase **"selectable port wiring interface for selective wiring"** should be construed to mean **"configurable wiring interface**

capable of providing at least one selected wired electrical connection;" the phrase **"selective wiring of said plurality of ports"** should be construed to mean **"at least one selected wired electrical connection provided by the configurable wiring interface;"** and the phrase **"selective wiring of said selectable port wiring interface"** should be construed to mean **"selected wired electrical connections provided by the plurality of ports."**

### b) Analysis

The phrase "selectable port wiring interface for selective wiring" appears in claims 15 and 48 of the '686 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same meaning in each claim. The phrase "selective wiring of said selectable port wiring interface" appears in claims 15 and 48 of the '686 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same meaning in each claim. The phrase "selective wiring of said plurality of ports" appears in claim 29 of the '686 Patent.

The Court finds that the intrinsic evidence indicates that the "selectable port wiring interface" is a wiring interface that is configurable. Specifically, the specification states that the "inputs for any particular monitoring device 10 may be different, e.g., if there are one thousand monitoring devices 10 in operation, each device may be configured differently." '686 Patent at 7:1–4. The specification adds that "[t]he flexibility comes because during initialization of monitoring device 10, the various inputs 42 and outputs 44 are listed and entered into a database of system 100 where they are defined along with any desired response that a client may wish system 100 to make ..." *Id.* at 7:4–8.

In addition, during the reexamination, the examiner's reason for allowance stated that each "monitoring device" comprises "a configurable interface." (Dkt. No. 44-3 at 5 (Dec. 13,

2010 Notice of Intent to Issue *Ex Parte* Reexamination Certificate)). The examiner also stated that "[t]he 'common database', located at the 'network server' stores, for the one or more 'monitoring devices' and related 'targets' the selectively variable configurations defining the ports, inputs, and outputs." (*Id.* at 5.) Accordingly, the intrinsic evidence indicates that the "selectable port wiring interface" is a configurable wiring interface. Indeed, the specification states that a "preferred advantage of the present invention is that each monitor/target interface can be configured differently because all initialization information is stored in a central database." '686 Patent at 4:48–52.

The intrinsic evidence also indicates that the "selectable port wiring interface" is capable of providing at least one selected wired electrical connection. For example, claims 15 and 48 explicitly recite that the interface is "for *selective wiring* of each of said plurality of wireless communication units to said plurality of targets." '686 Patent at Claims 15 and 18 (emphasis added). Likewise, the specification states that "interface 40 connects inputs 42, outputs 44, and status signals 46 to monitoring device 10 preferably via cabling 48." *Id.* at 6:60–63. The specification also states that "[t]he outputs and inputs are electrical signals that are used with the target and are related to the type of target and may include a wide range of signals." *Id.* at 9:53–56.

Furthermore, the examiner's reasons for allowance stated that the "configurable interface" is "used for signaling between the 'monitoring device' and the 'target'." (Dkt. 44-3 at 5 (Dec. 13, 2010 Notice of Intent to Issue *Ex Parte* Reexamination Certificate)). Similarly, the specification states "that events that occur, i.e., signals from the target, are transmitted according to the programming of microcontroller 50." '686 Patent at 9:43–45. Accordingly, a person of ordinary skill in the art would understand that signaling between the "monitoring device" and the

"target" is possible because of the wired electrical connection provided by the recited "selectable port wiring interface." Moreover, a person of ordinary skill in the art would understand the electrical connection is a physical wired connection because it provides "selective wiring."

Similarly, a person of ordinary skill in the art would understand that the "selective wiring of said selectable port wiring interface" refers to at least one selected wired electrical connection provided by the configurable wiring interface. In claims 15 and 48, the phrase "selectable port wiring interface for selective wiring" provides antecedent basis for the phrase "selective wiring of said selectable port wiring interface." As discussed above, the recited "selective wiring" is at least one wired electrical connection provided by the configurable wiring interface that is "used for signaling between the 'monitoring device' and the 'target'." (Dkt. 44-3 at 5 (Dec. 13, 2010 Notice of Intent to Issue *Ex Parte* Reexamination Certificate)). Accordingly, a person of ordinary skill in the art would interpret the phrase "selective wiring of said selectable port wiring interface" to mean "at least one selected wired electrical connection provided by the configurable wiring interface."

Claim 29 also recites "selective wiring," but recites that it is "selective wiring of said plurality of ports." However, for the same reasons discussed above, a person of ordinary skill in the art would understand that the "plurality of ports" provide the wired electrical connection that is "used for signaling between the 'monitoring device' and the 'target'." (Dkt. 44-3 at 5 (Dec. 13, 2010 Notice of Intent to Issue *Ex Parte* Reexamination Certificate)). Accordingly, a person of ordinary skill in the art would interpret the phrase "selective wiring of said plurality of ports" to mean "selected wired electrical connections provided by the plurality of ports."

Turning to the parties' constructions, the Court finds that Plaintiff's construction fails to indicate that the interface includes physically wired electrical connections. In addressing the

reexamination statements, Plaintiff argues that "[t]he Smith invention uses I/O interfaces and databases, those things constitute structure, but the point made is that the Smith invention achieves functionality beyond the prior art because it employ[s] interfaces that are selectable and variable." (Dkt. No. 45 at 6.)   The problem with Plaintiff's argument is that the recited "interface" becomes purely functional, and the recited "selective wiring" that connects "of each of said plurality of wireless communication units to said plurality of targets" is read out of the claims. *Merck & Co. v. Teva Pharms. USA, Inc.,* 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

Plaintiff's construction is also inconsistent with the arguments made during the reexamination.  Specifically, the patent owner argued that "[t]he proposed citation from Suman (43:64-44:16) by Requestor and the Office Action for 'installing' inputs and outputs to the monitoring device clearly are not operable for selective wiring and do not even involve ports or wiring of inputs and outputs to the ports." (Dkt. No. 44-4 at 19 (Oct. 20, 2010 Office Action Response)).  Similarly, the patent owner argued that "[c]learly, Suman does not teach the capability to select which inputs and outputs can be connected to which ports, as per the present claim language, *as required by the claim language*." (*Id.* at 20) (emphasis added).  Likewise, the patent owner reiterated that "[t]he proposed citation from Suman (43:64-44:16), … for 'installing' inputs and outputs to the monitoring device clearly <u>are not operable for selective wiring for the ports, inputs, and outputs, and do not involve wiring at all.</u>" (*Id.* at 31) (emphasis in original).  As emphasized during reexamination, a key distinction from the cited prior art was the "selective wiring" of the ports, inputs, and outputs.  This is explicitly recited in the claims, and Plaintiff's construction eliminates the distinction argued for by the patent owner.

Likewise, Plaintiff's construction introduces an undefined "device on the target." The claims do not recite a "device," and the Court is not persuaded that it should be added to the claims. The claim language clearly states that the "wireless communication unit" includes a wiring interface that connects the target to the wireless communication unit. There is no reason to introduce an undefined "device" into the claims. Accordingly, the Court rejects Plaintiff's construction.

Regarding Defendant's construction, the Court agrees that the interface is "configurable." The Court also agrees that the recited interface provides a wired electrical connection that can be selected. However, the Court finds Defendant's construction is confusing, ambiguous, and unnecessarily complex. Defendant's proposed language of "a selectively variable wired connection of a configurable interface port" is more clearly stated as a "configurable wiring interface capable of providing at least one selected wired electrical connection."

Turning to the remaining portion of Defendant's construction, the Court finds that it adds unwarranted limitations to the claims. Defendant argues that the physical structure of "selectable port wiring"/"selective wiring" relative to each claim's plurality of wireless communication units also involves expressly recited structural claim elements of "one or more inputs" and "one or more outputs." (Dkt. No. 44 at 10.) The Court finds that the claim language explicitly recites the input/outputs, and there is no reason to read them into these disputed phrases, as Defendant proposes. Indeed, Plaintiff correctly argues that, if Defendant's claim language is inserted back into the claims, it conflicts with the subsequent claim language and makes the claim unnecessarily confusing. Moreover, a sensor could be attached to the communication unit and the target asset to monitor conditions on the asset rather than to "control a desired action on the target," as Defendant's construction would require. Accordingly, the

Court rejects Defendant's construction.

### c) Court's Construction

In light of the intrinsic evidence, the Court construes the phrase **"selectable port wiring interface for selective wiring"** to mean **"configurable wiring interface capable of providing at least one selected wired electrical connection;"** the phrase **"selective wiring of said plurality of ports"** to mean **"at least one selected wired electrical connection provided by the configurable wiring interface;"** and the phrase **"selective wiring of said selectable port wiring interface"** to mean **"selected wired electrical connections provided by the plurality of ports."**

### 2. "said inputs to be controlled"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **"said inputs to be controlled"** | "signals or data to the wireless communication unit that may be reported and/or controlled" | Indefinite |

### a) The Parties' Positions

Defendant argues that the phrase "said one or more inputs to be controlled" is indefinite because: (1) it lacks antecedent basis; (2) it is unclear what the claim phrase means in the context of the claims under 35 U.S.C. §112, ¶ 2; and (3) the phrase does not comply with the 35 U.S.C. § 112, ¶ 1 requirement to provide written descriptive support for the same. Defendant contends that the "introductory" clause in claims 15 and 48 of "whereby one or more inputs to said wireless communication unit are operable for monitoring" does not provide antecedent basis support for the claims' "subsequent" clause that a common database stores "definitions of said one or more inputs to be controlled." (Dkt. No. 44 at 13-14.) Defendant argues that the "whereby" input and output clauses of claims 15 and 48 are material to patentability because the recited "one or more inputs" and "one or more outputs" are claim element noun inputs and

outputs defining structure of the monitoring system. (*Id.* at 14.)  According to Defendant, these inputs and outputs must also have the further limitations of their stated operability, and the overall claimed system is not operative without them. (*Id.*)

Defendant further argues that the antecedent basis issue raised does not involve a typographical or obvious error or an antecedent basis by implication. (*Id.* at 15.)  Defendant contends that the interrelation of the "introductory" and "subsequent" clauses in claims 15 and 48 are beyond dispute. (*Id.*)  Defendant argues that each claim has an "introductory" clause that defines "the plurality of wireless communication units" as "each comprising a selectable port wiring interface for selective wiring of each of said plurality of wireless communication units to said plurality of targets whereby…." (*Id.*)  Defendant further contends each claim has a "subsequent" clause which concerns the common database definition information for said plurality of wireless communication units. (*Id.*)

Defendant argues that the "subsequent" clause recites the definition information as comprising definitions of the claim elements and limitations recited in the "introductory" clause. (*Id.*) Defendant further contends that multiple claim elements and limitations are recited and linked, namely the wireless communication units and their selective wiring, selectable port wiring interface, inputs, and outputs. (*Id.*)  According to Defendant, claims 15 and 48 are unclear because "one or more inputs…operable for monitoring" does not provide antecedent basis support for the subsequently recited "said one or more inputs to be controlled." (*Id.*)  Defendant further argues that independent claim 29 does not have this incongruity because it consistently references inputs to be monitored and outputs to be controlled. (*Id.* at 16.)

Defendant also argues that the interrelation of the "introductory" and "subsequent" clauses of claims 15 and 48 was the basis for the examiner's reasons for the issuance of the

Reexamination Certificate. (*Id.*) Defendant contends that the examiner understood that the "ports…are selectable for connection to individually selectable inputs (inputs to monitoring device from target) and individually selectable outputs (outputs from monitoring device to control target)." (*Id.*) Defendant argues that claim 29 correctly references inputs to be monitored and outputs to be controlled. (*Id.*) Defendant contends that claims 15 and 48 lack of antecedent basis is compounded by the incongruent ambiguity of how a directionally wired input connection from the target to the wireless communications unit for monitoring nevertheless can be controlled. (*Id.* at 17.)

Defendant also argues that the limitation of "said inputs to be controlled" in claims 15 and 48 is indefinite because it is unclear what the claim phrase means in the context of the claims. (*Id.*) Defendant argues that the claim phrase "said one or more inputs to be controlled" is indefinite because it is unclear how selective port wiring inputs "operable for monitoring" are to be controlled. (*Id.* at 18.) Defendant contends that it is also uncertain what the control of "said one or more inputs to be controlled" is, where it comes from, and how it operates. (*Id.*) Defendant further argues that it is unclear whether the inputs' directional connection (from target to unit) for monitoring somehow involves the outputs' directional connection (from unit to target) to be controlled. (*Id.* at 18-19.) Defendant also argues that it is indiscernible how the common database's "definitions" of the "said one or more inputs to be controlled" interacts with the claims' recited selective port wiring inputs as a physical structure to accomplish control of inputs operable for monitoring. (*Id.* at 19.) Finally, Defendant argues it is unclear whether the "one or more inputs…operable for monitoring" can be controlled. (*Id.*) According to Defendant, the cumulative effect of the above uncertainties presents incongruity and a lack of clarity which is unresolved and cannot be reasonably ascertained by a person of ordinary skill in the art from

the subject claims and their intrinsic record. (*Id.*)

Regarding Plaintiff's construction, Defendant argues that it conflates physical claim elements and limitations with newly introduced functional operability. (*Id.* at 20.) Defendant also argues that claims 15 and 48 recite physical structures of the wireless communication units and their selective wiring. (*Id.*) Defendant contends that Plaintiff's construction renders the recited structure superfluous as if the existence of "definitions" in a common database by itself accomplishes the telling of what to do and controls the input and output functions. (*Id.*) Defendant argues that that the terms "signals," "data," and "reported" do not appear in claims 15 and 48. (*Id.*) Defendant further contends that the subject claims do not explain how "signals or data" relate to or allow "one or more inputs…operable for monitoring" to be "inputs to be controlled." (*Id.* at 20-21.) Defendant argues that Plaintiff's construction does not explain the relationship of "signals or data" to the subject claims' recitation of structural claim elements, including "inputs" and monitored "targets." (*Id.* at 21.) According to Defendant, Plaintiff's construction sheds no light on the several incongruent ambiguities presented by "said one or more inputs to be controlled" in relation to "one or more inputs…operable for monitoring." (*Id.*)

Finally, Defendant argues that claims 15 and 48 are invalid because they do not comply with 35 U.S.C. § 112, ¶ 1, for failure to provide written descriptive support for the claims. (*Id.* at 21.) Defendant contends that the specification of the '686 Patent provides no support for how a wireless communication with configured selective port wiring "inputs" "operable for monitoring" are "to be controlled." (*Id.* at 22.) Defendant argues that there is no reference to "inputs…operable for monitoring" being "inputs to be controlled" in the specification or claims of the '686 Patent as originally filed. (*Id.* at 23.) Defendant also argues that the specification of the '686 Patent is devoid of any explanation on how an input operable for monitoring can be

controlled. (*Id.*)

Defendant disagrees with Plaintiff's statement that "[t]he definition data tells the inputs and outputs what to do, and thereby controls both inputs and output functions." (*Id.* at 24.) According to Defendant, this statement cannot satisfy the § 112, ¶ 1 requirement that the full scope of each claim of a patent be supported by a specification description that clearly conveys the inventors were in possession of the claimed invention at the time the original application for patent was filed. (*Id.*) Defendant contends that the '686 Patent discloses that the configuration of the input/output port wiring is stored in a system database. (*Id.*) Defendant argues that the examiner understood that the '686 Patent taught individually selectable inputs to the monitoring device from the target (performing monitoring of the target) and individually selectable outputs from the monitoring device to the target (to control the target). (*Id.* at 24-25.) According to Defendant, the specification does not teach the discordant claims 15 and 48 recitals of how "one or more inputs…operable for monitoring" can be "said one or more inputs to be controlled." (*Id.* at 25.)

In its opening brief, Plaintiff argues that Defendant reaches its indefinite conclusion by reading the phrase out of context. (Dkt. No. 39 at 18.) Plaintiff contends that the "definitions of said one or more inputs to be controlled" is a database limitation, *i.e.*, it describes the database portion of the invention. (*Id.*) Plaintiff argues that this fact puts the element in context and distinguishes the use of the phrase "inputs to be controlled" from the phrase "inputs operable . . . for monitoring" in other claim elements. (*Id.*) Plaintiff further argues that the database is "configured for storing definition information" and that information includes "definitions of . . . inputs to be controlled, . . . outputs to be controlled, and . . . said selectable port wiring interface . . . ." (*Id.*) Plaintiff argues that the inputs, outputs, and wiring interface are components of the

invention, and they form part of the overall system. (*Id.*)  According to Plaintiff, the phrase "inputs to be controlled" is not indefinite or ambiguous in any way. (*Id.* at 19.)  Plaintiff argues that this phrase refers to the input systems that are controlled by the definition information contained in the database. (*Id.*)

Plaintiff further argues that the phrase must be read in the context in which it is used. (*Id.*)  Plaintiff contends that the phrase "outputs . . . are operable to be controlled" refers to the signals sent from the output component of the wireless communication unit to control various aspects of the system, such as turning off the engine. (*Id.*)  Plaintiff argues that the purpose of this element is to explain how the database functions and that the element is an integral part of the overall invention. (*Id.* at 20.)

Plaintiff also argues that the specification provides further support for what is indicated by the claims standing on their own. (*Id.*)  Plaintiff contends that the specification explains that the "database stores the relevant inputs and outputs, client specifications regarding inputs and outputs, client messages and types of messages in response to signals, and so forth. " (*Id.* at 21) (citing '686 Patent at 12:53–55).  Plaintiff contends that this information is stored in the database so that the database working with a server can operate the entire system. (Dkt. No. 39 at 21.) According to Plaintiff, this is why the claims use the phrase "definitions of said one or more inputs to be controlled, said one or more outputs to be controlled." (*Id.*)  Plaintiff also argues that the notion of control over inputs is discussed elsewhere in the specification. (*Id.*) (citing '686 Patent at 1:41–44).

Plaintiff also argues that the prosecution history addresses the notion of controlling inputs and outputs. (*Id.*)  Plaintiff contends that the terms "input" and "output" simply indicate direction with reference to a signal and are used to describe processes, not necessarily devices. (Dkt. No.

39 at 21.) Plaintiff contends that the invention at issue is made of various components, and these components act in relation to one another. (*Id.* at 22.) Plaintiff argues that the various components have both input and output functions. (*Id.*) Plaintiff further argues that Defendant is incorrect in stating that inputs are for monitoring and outputs are for controlling. (*Id.*) Plaintiff contends that the phrase "definitions of said one or more inputs to be controlled" is understood as the definition data that tells the inputs and outputs what to do and thereby controls both the input and output functions. (*Id.* at 23.)

Plaintiff also argues that the examiner understood the term "control input" as input signal originating from the user's computer. (*Id.*) (citing Dkt. No. 39-6 at 20 (September 11, 2009 Office Action filed in *Ex Parte* Reexamination Control 90/009,121), Dkt. No. 39-7 at 11 (November 11, 2009 Office Action Response filed in *Ex Parte* Reexamination Control 90/009,121)). According to Plaintiff, the prosecution history shows the examiner and the patentee routinely using the term "control inputs" with seeming ease and clarity. (Dkt. No. 39 at 23.)

Plaintiff further argues that Defendant offers no conflicting interpretation of the phrase "inputs to be controlled." (*Id.* at 24.) Plaintiff contends that the phrase "inputs to said wireless communication units are operable for monitoring" describes a process whereby a signal is carrying information to the wireless communication unit. (*Id.*) Plaintiff argues that the phrase "database being configured for storing definition information for said plurality of wireless communication units comprising definitions of said one or more inputs to be controlled" is describing a particular type of database. (*Id.*) According to Plaintiff, it describes a database that stores definition information, and this definition information controls the inputs on the wireless communication units. (*Id.*)

Plaintiff also argues that the words "monitor" and "control" as used in this patent typically describe the type of information carried by a signal. (*Id.*) Plaintiff contends that monitoring information is information about the target or the monitoring unit, and control information is information that directs a process. (*Id.*) Plaintiff argues that it could be a process at or on the target, such as actuating a door lock, but it does not have to be. (*Id.*) According to Plaintiff, the term "control output" by itself does not indicate what is being controlled, at least not until the term is read in the sentence or paragraph where it is used. (*Id.* at 25.)

In its reply brief, Plaintiff argues that there is no confusion among skilled artisans over the term "said inputs" or "inputs to be controlled." (Dkt. No. 45 at 7.) Plaintiff argues that the wireless communication units have both input and output interfaces that are capable of sending and receiving signals. (*Id.*) Plaintiff contends that the input/output interfaces are often the same physical device, which can be configured to function either as an input interface or an output interface or both. (*Id.*) Plaintiff argues that Defendant strains to find ambiguity where there is none. (*Id.*) Plaintiff contends that the word "said" is used in the phrase "said inputs to be controlled" as a definite article. (*Id.* at 8.) Plaintiff argues that the definite article "the" could be substituted for "said" without any change in meaning whatsoever. (*Id.*) Plaintiff also argues that there is no interrelation between claims 15 and 48. (*Id.* at 9.)

Plaintiff further contends that the key word in the phrase "definitions of . . . outputs to be controlled" is "definitions." (*Id.* at 9-10.) Plaintiff argues that the phrase means that the "definitions" control the output interfaces. (*Id.* at 10.) Based on this premise, Plaintiff contends that there is no reason why the phrase "definitions of . . . inputs to be controlled" would be treated any differently. (*Id.*) Plaintiff contends that it simply means that the definitions control the input interfaces. (*Id.*) Plaintiff argues that when the input/output devices are the same

devices, the I/O device has to be configured (controlled) to function as an input or an output. (*Id.*)

Plaintiff further argues that Defendant suggests that, but for the "to be controlled" language, things would be just fine, but with that language there is catastrophe. (*Id.*) Plaintiff argues that Defendant fails to explain how any of this matters in light of the context. (*Id.*) Plaintiff contends that if "inputs to be monitored" had been used instead of "inputs to be controlled," the claim would have said "comprising definitions of said one or more inputs [to be monitored]." (*Id.*) According to Plaintiff, the phrase would still mean that the definitions in the database control the input interface. (*Id.*) Plaintiff contends that both the inputs and the outputs are controlled by the definitions. (*Id.* at 11.)

Plaintiff also argues that Defendant contends that it is unclear how the inputs are to be controlled and even questions whether inputs can be controlled. (*Id.*) According to Plaintiff, the fact that inputs/outputs are configurable means that they can be controlled. (*Id.*) Plaintiff contends that the definition information in the database provides the control information that is implemented by the server and communicated wirelessly to the wireless communication units. (*Id.*) (citing '686 Patent at 4:48–51.) Plaintiff argues that the answer to Defendant's questions of what it is, where it comes from, and how it operates is addressed in the specification. (Dkt. No. 45 at 10) (quoting '686 Patent at 7:1–8).

Finally, regarding Defendant's written description argument, Plaintiff contends that it is improper and has no place in its claim construction brief. (*Id.* at 12.) Plaintiff argues that Defendant is raising an enablement issue challenging invalidity, not a claim construction issue. (*Id.*) Plaintiff contends that this type of defense should be raised in other proceedings. (*Id.*) Plaintiff further argues that it has already pointed to the specification to show how the invention

can be practiced in various embodiments, particularly with respect to the definitions in the database controlling the I/O devices. (*Id.*) (citing '686 Patent at 7:1–8).

For the following reasons, the Court finds that claims 15 and 48 include an obvious clerical error that should be corrected by the Court. Accordingly, the Court construes the phrase **"said inputs to be controlled"** to read **"said inputs to be monitored."**

### b) Analysis

The phrase "said inputs to be controlled" appears in claims 15 and 48 of the '686 Patent. The Court finds that the phrase includes an obvious clerical error made by the examiner's amendments in the December 13, 2010 Notice of Intent to Issue *Ex Parte* Reexamination Certificate. (Dkt. No. 44-3). Specifically, the examiner, not the patent owner, amended all of the independent claims to recite that the "inputs/variables" were "to be monitored" and that the "outputs/items" were "to be controlled." The "to be monitored" and "to be controlled" language was included in original claim 3, which recited "said plurality of targets having at least first and second variables to be monitored and having at least first and second items to be controlled." Thus, it is clear that the examiner intended for all of the independent claims to include this limitation. Indeed, the examiner explicitly stated this in the "Reasons for Allowance" section:

> All independent claims, claims 1, 3, 15, 29, and 48, *have been amended to clarify* that one common database, located in a network server, stores all configuration definitions of the one or more configurable interfaces located between the one or more monitoring devices and the monitoring device's associated targets. The stored information includes: the selected ports for connections, the *inputs/variables to be monitored*, and the o*utputs/items to be controlled.*

(*Id.* at 8) (emphasis added). Consistent with this statement, the examiner amended the independent claims to include the phrases "to be monitored" and "to be controlled" where the terms "inputs/variable" and "outputs/items" appeared in the claims, respectively. For example, the examiner amended original claim 3 as follows:

3. (Amended) A method for monitoring a plurality of targets, said plurality of targets having at least first and second variables to be monitored and having at least first and second items to be controlled, said first and second variables being selectively different for different of said plurality of targets, said first and second items to be controlled being selectively different for different of said plurality of targets, said method comprising: attaching a transceiver with an antenna to each of said plurality of targets; providing a configurable electrical interface with a plurality of ports for each of said plurality of targets for interfacing between said transceiver and said first and second variables to be monitored and said first and second items to be controlled; entering definition data into a common database of a network server to define said first and second variables to be monitored and said first and second items to be controlled whereby said definition data selectively varies between said plurality of targets, said definition data stored in said common database further comprises a configuration of said plurality of ports which are selectively electrically connected with respect to said first and second variables to be monitored and said first and second items to be controlled, said definition data for said configuration of said plurality of ports being selectively variable between said plurality of targets; receiving data to said network server through a wireless network from said transceiver, interpreting said received data based on said definition data in said common database; connecting to said common database of said network server

(*Id.* at 15-16) (emphasis added). Similarly, the examiner amended independent claim 29 as follows:

29. (Three Times Amended) A monitoring system operable for monitoring a plurality of targets on behalf of a plurality of users, each of said users being associated with one or more of said plurality of targets, comprising:

a computer network server operable for communicating with a plurality of client

a common database of said computer network server operable for storing information relating to each of said plurality of targets; a plurality of wireless communication units, a respective of said plurality of wireless communication units associated with said plurality of targets, each of said plurality of wireless communication units including a position sensor to provide location information for each of said plurality of targets;

a wireless network system operable for communicating wirelessly with a plurality of wireless communication units, said computer network server being in communication with said wireless network system, each of said plurality of wireless communication units being operable for communication with said wireless network system[.];

each wireless communication unit comprising a transceiver for two-way communication with said wireless network system related to a plurality of [control] inputs to be monitored and [said] a plurality of [status] outputs to be controlled of said target, a plurality of ports for selective wiring of inputs to be monitored and said outputs to be controlled between said wireless communication unit and said target;

wherein said common database comprises definitions of said inputs to be monitored, said outputs to be controlled and said selective wiring of said plurality of ports;

(*Id.* at 6) (emphasis added). For the two claims at issue, independent claims 15 and 48, the examiner made similar amendments that included an obvious clerical error for the second

recitation of "inputs" in the claims. Specifically, the examiner amended claim 15 as follows:

15. (Three Times Amended) A monitoring system for monitoring a plurality of targets on behalf of a plurality of clients, each of said clients being associated with one or more of said plurality of targets, comprising:

...

said plurality of wireless communication units each comprising a selectable port wiring interface for selective wiring of each of said plurality of wireless communication units to said plurality of targets whereby one or more inputs to said wireless communication unit are operable for monitoring by a respective of said plurality of client computers and one or more outputs for said wireless communication unit are operable to be controlled by said respective of said plurality of client computers and;

said common database being configured for storing definition information for said plurality of wireless communication units comprising definitions of said one or more inputs to be controlled, said one or more outputs to be controlled and said selective wiring of said selectable port wiring interface for said plurality of wireless communication units;

(*Id.* at 11-12) (emphasis added). As indicated above, the amendments introduce "one or more inputs … operable for monitoring," but then state "said one or more inputs to be controlled." Similarly, the examiner amended claim 48 as follows:

> 48. (New) A monitoring system for monitoring a plurality of targets on behalf of a
> plurality of clients, each of said clients being associated with one or more of said
> plurality of targets, comprising:
>
> ...
>
> said plurality of wireless communication units each comprising a selectable port wiring
> interface for selective wiring of each of said plurality of wireless communication units to
> said plurality of targets whereby one or more inputs to said wireless communication unit
> are operable for monitoring by a respective of said plurality of client computers and one
> or more outputs for said wireless communication unit are operable to be controlled by
> said respective of said plurality of client computers: and
>
> said common database being configured for storing definition information for said
> plurality of wireless communication units comprising definitions of said one or more
> inputs to be controlled, said one or more outputs to be controlled and said selective
> wiring of said selectable port wiring interface for said plurality of wireless communication
> units.

(*Id.* at 20-22) (emphasis added). Again, the amendments introduce "one or more inputs …
operable for monitoring," but then state "said one or more inputs to be controlled."

A district court can correct a patent only if: (1) the correction is not subject to reasonable
debate based on consideration of the claim language and the specification; and (2) the
prosecution history does not suggest a different interpretation of the claims. *Novo Indus., L.P. v.
Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003). In this instance, the Court finds that
when the amendments are considered in the context of the claim language, specification, and
prosecution history, the clerical error made by the examiner is not subject to reasonable debate.
The term "inputs" appears only twice in claims 15 and 48. As Defendant recognizes, the term
"inputs" is first introduced in the clause "whereby one or more inputs to said wireless

communication unit are operable for monitoring."  The term "inputs" is then recited again in the context of the "common database being configured for storing definition information for said plurality of wireless communication units."  The claims specify that that information comprises the "definitions of said one or more inputs to be controlled."

It is clear that the "said one or more inputs" is referring to the "one or more inputs" introduced in the first clause.  Indeed, the examiner explicitly stated that all of the independent claims were globally amended to clarify that "[t]he stored information includes: the selected ports for connections, the inputs/variables to be monitored, and the outputs/items to be controlled." (Dkt. No. 44-3 at 8) (Dec. 13, 2010 Notice of Intent to Issue *Ex Parte* Reexamination Certificate).  Moreover, this is not an instance where the term "inputs" is referenced multiple times in the claims, thereby making it unclear which "inputs" the clerical error intended to reference.  Likewise, as Defendant contends, the specification does not refer to "inputs to be controlled."  Plaintiff is correct that other claims refer to "control inputs," but that is a different claim term, and the examiner amended independent claim 29 to replace "control inputs" with "inputs to be controlled." (*Id.* at 6.)  Accordingly, the Court finds that the correction is not subject to reasonable debate based on consideration of the claim language and the specification.

The Court further finds that the prosecution history does not suggest a different interpretation of the claims.  In fact, the prosecution history confirms that the examiner made an obvious clerical error when the amendments were made.  In the "Reason for Allowance" section, the examiner stated that the claims were amended to clarify that "[t]he stored information includes: the selected ports for connections, the inputs/variables to be monitored, and the outputs/items to be controlled." (*Id.* at 8.)  As discussed above, all of the independent claims

were amended consistent with this statement. Indeed, the first clause that introduces "inputs" in claims 15 and 48 is consistent with the examiner's statement. Accordingly, the Court finds that the phrase "said one or more inputs to be controlled" includes an obvious clerical error made by examiner's amendments. Consistent with the clause that introduces "inputs" in claims 15 and 48 and consistent with the examiner's amendments made to the other independent claims in the '686 Patent, the Court finds that the phrase "said inputs to be controlled" should be construed to read "said inputs to be monitored."

Turning to the parties' positions, the Court finds that neither party adequately addressed the obvious clerical error. Plaintiff does not provide any analysis of the history of the amendments and makes no argument that the claims include a clerical error. Defendant provides a conclusory statement that "[t]he antecedent basis issue raised herein does not involve typographical or obvious error or an antecedent basis by implication." (Dkt. No. 44 at 15.) According to Defendant, the issue instead "involves inextricably related claim clauses key to the issuance of the Reexamination Certificate." (*Id.* at 15.)

The Court agrees that the clauses are related, but as discussed above, the relationship is based on global amendments made to all of the independent claims by the examiner during the reexamination of the '686 Patent. When the claim language, specification, and prosecution history are considered and properly analyzed, the obvious clerical error and correction made by the Court is not subject to reasonable debate. *CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1358 (Fed. Cir. 2011) ("It is well-settled law that, in a patent infringement suit, a district court may correct an obvious error in a patent claim."). Accordingly, the Court rejects the parties' arguments. The Court further finds that, with the clerical error corrected, the phrase "said inputs to be monitored" does not lack antecedent basis in claims 15 and 18. Furthermore,

the Court finds that the claims, read in light of the specification delineating the patent, and the prosecution history, reasonably inform those skilled in the art about the scope of the invention.

### c) Court's Construction

In light of the intrinsic and extrinsic evidence, the Court finds that claims 15 and 48 include an obvious clerical error made by the examiner during the reexamination. Accordingly, the Court construes the phrase **"said inputs to be controlled"** to read **"said inputs to be monitored."**

### 3. "inputs to said wireless communication unit are operable for monitoring" and "inputs to be monitored"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "inputs to said wireless communication unit are operable for monitoring" | "signals or data to the wireless communication unit that may be monitored" | "electrical signal inputs to the communications unit from the target that detects an operation or condition of the target and has no effect upon the operation or condition" |
| "inputs to be monitored" | "signals or data to the wireless communication unit that may be monitored" | "electrical signal inputs to the communications unit from the target that detects an operation or condition of the target and has no effect upon the operation or condition" |

### a) The Parties' Positions

Defendant contends that Plaintiff's construction eliminates physical structure recited in the claim language. Plaintiff contends that Defendant's construction adds limitation to the claims. Plaintiff argues that the terms "output", "input", "controlled" and "monitoring" are used throughout the patent and are straightforward. (Dkt. No. 39 at 25.) Plaintiff argues that Defendant's construction takes ordinary terms and burdens them with limitations or restrictions that the general definitions of those terms do not carry. (*Id.* at 26.) Plaintiff argues that the patent uses the term "inputs" to refer to signals to the wireless communication unit that carry information and that it describes a system that enables the client user to access this monitoring

information from the client computer. (*Id.*) Plaintiff contends that the phrase "inputs to said wireless communication units are operable for monitoring" means that the "inputs," which are the signals to the communication units, can be monitored by the client. (*Id.* at 26-27.)

Regarding Defendant's construction, Plaintiff argues it is too limiting and that it is not clear what it is attempting to define. (*Id.* at 27.) Plaintiff contends that the claims are not limited to signals from the target and may also be signals from other sources, such as a GPS satellite. (*Id.*) Plaintiff further argues that the input does not necessarily detect an operation or condition of the target. (*Id.*) (quoting '686 Patent at 7:61). Plaintiff contends that Defendant's construction adds a limitation not in the claim and actually undermines the design intent of the invention. (*Id.*) Plaintiff also argues that Defendant's language of "no effect upon the operation or condition" of the target is a limitation that is not contained in the patent. (*Id.* at 28.) According to Plaintiff, the input signal may or may not affect the condition or operation of the target. (*Id.*) (quoting '686 Patent at 2:67–3:2).

Defendant responds that the actual claim language introduces "inputs" and "outputs" as necessary noun claim elements. (Dkt. No. 44 at 26.) Defendant argues that the "whereby" clause recites "one or more inputs" and "one or more outputs" as defining structures of the wireless communication units in association with the selectable port wiring interface for selective wiring, which has certain other limitations of operable functionality. (*Id.*) Defendant also argues that the recitation of claim 29 similarly introduces "a plurality of inputs" and "a plurality of outputs" as nouns in association with the plurality of ports for selective wiring of the structural inputs and outputs. (*Id.*)

Regarding Plaintiff's construction, Defendant argues that "signals or data" marginalizes the physical structure of recited "inputs" as wired connections relative a selectable port wiring

interface for selective wiring of each wireless communication unit to the plurality of targets, recited in claims 15 and 48, or "a plurality of ports" for selective wiring of the structural inputs and outputs, recited in claim 29. (*Id.*)  Defendant also argues that Plaintiff contends that it is "signals or data" which are monitored or controlled, not the selective wired "one or more inputs" or "one or more outputs" noun claim elements that are actually recited in the claim language. (*Id.*)  Defendant further argues that Plaintiff's construction references only "signals or data" to the wireless communication unit whereas the claim language defines selective port wiring of each wireless communication units to the recited targets. (*Id.*) (quoting '686 Patent at 2:24–26). Defendant contends that the correct construction recognizes configured port wired inputs as structural wired connections to the communications unit from the target to be monitored. (Dkt. No. 44 at 27.)

Defendant further contends that the term "electrical signal inputs" uses the words "electrical signal" as an adjectival modifier of the noun "inputs" to provide an explanatory stating of the type of structural inputs positively recited in the subject claims. (*Id.*)  Defendant argues that it does not replace the noun claim element "inputs." (*Id.*)  Defendant further argues that the inputs are also to the communications unit from the target because the subject claim language specifies the directional wired input connection. (*Id.*)  Defendant contends that "monitoring" or "to be monitored" means the inputs "detects an operation or condition of the target and has no effect upon the operation or condition." (*Id.*) (citing *Webster's Encyclopedic Unabridged Dictionary of the English Language* (1989)).

Finally, Defendant argues that the construction of "inputs" and "outputs" as structural claim element nouns involving configurable wired ports, as opposed to a proposed substitution of "signals or data" for the same, was the basis upon which the patentee's October 20, 2010

Amendment and remarks distinguished the patent over the cited Suman reference and the reason for allowance issued by the examiner. (Dkt. No. 44 at 27) (citing Dkt. 44-4 at 7-8 (Oct. 20, 2010 Office Action Response), Dkt. 44-3 at 10-11 (Dec. 13, 2010 Notice of Intent to Issue *Ex Parte* Reexamination Certificate)).

For the following reasons, the Court finds that the phrase **"inputs to said wireless communication unit are operable for monitoring"** should be construed to mean **"signals provided to the wireless communication unit via a wired electrical connection that may be monitored."** The Court also finds that the phrase **"inputs to be monitored"** should be construed to mean **"signals provided to the wireless communication unit via a wired electrical connection that may be monitored."**

### b) Analysis

The phrase "inputs to said wireless communication unit are operable for monitoring" appears in claims 15 and 48 of the '686 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same meaning in each claim. The phrase "inputs to be monitored" appears in claims 15, 29, and 48 of the '686 Patent.[3] The Court finds that the phrase is used consistently in the claims and is intended to have the same meaning in each claim. The parties agree that both phrases should be construed the same.

The Court finds that the intrinsic evidence indicates that the recited "inputs" includes signals. The specification states that "[t]he outputs and inputs are electrical signals that are used with the target and are related to the type of target and may include a wide range of signals." '686 Patent at 9:53–56. The specification further states that "[a] plurality of inputs to the monitoring device from the target are provided as well as plurality of outputs from the

---

[3] As indicated above, the Court construes the phrase "said inputs to be controlled" to read "said inputs to be monitored."

monitoring device to the target. If the target is a vehicle, then the interface communicates electrical signals relating to one or more elements of the vehicle." *Id.* at 2:24–29. Furthermore, the parties agree that "inputs" include at least electrical signals. Plaintiff's construction includes "signals or data," and Defendant's construction includes "electrical signal inputs." The parties also agree that "inputs" are to the wireless communication unit. The Court finds that this is indicated by the claim language, which explicitly recites "inputs to said wireless communication units." Accordingly, the Court finds that "inputs" are "signals provided to the wireless communication unit."

The parties dispute whether the recited "inputs" include not only a signal, but also physical structure (*i.e.*, a wired electrical connection). The Court finds that the intrinsic evidence indicates that the recited "inputs" include a wired electrical connection. Specifically, during the reexamination, the patent owner repeatedly emphasized that the prior art failed to disclose inputs and outputs that are wired and connected to ports. For example, the patent owner argued that "Wooten does not teach configurable ports which are selectively connected to the inputs and outputs." (*Id.*)

The patent owner also argued that the input and outputs include a wired electrical connection by arguing that "[t]he proposed citation from Suman (43:64 -44:16) … for 'installing' inputs and outputs to the monitoring device clearly are not operable for selective wiring for the ports, inputs, and outputs, and do not involve wiring at all." (*Id.* at 31, *see also*, *id.* at 19 ("The proposed citation from Suman (43:64 -44: 16) by Requestor and the Office Action for 'installing' inputs and outputs to the monitoring device clearly are not operable for selective wiring and do not even involve ports or wiring of inputs and outputs to the ports.").

Consistent with the patent owner's arguments, the examiner's reason for allowance stated

that "[t]he 'configurable interface' ('686, 7: 1-13; 10: 20-36) between each monitoring device and each monitoring device's associated target comprises ports that are selectable for connection to individually selectable inputs (inputs to monitoring device from target) and individually selectable outputs (outputs from monitoring device to control target)." (Dkt. No. 44-3 at 5 (December 13, 2010 Notice of Intent to Issue *Ex Parte* Reexamination Certificate)). Furthermore, consistent with the prosecution history, the claim language itself indicates that the "inputs" include a wired electrical connection. Claims 15 and 48 recite that the "wiring interface" is for "selective wiring" of the targets to the wiring interface.

The specification also indicates that the recited "inputs" include a wired electrical connection. The specification states that "[i]nputs to monitoring device 10 for use with a vehicle may include, for example only, a panic button, air bag deployment, siren, lights, auxiliary signals, cargo door sensor (open/close), or a threshold indicator such as cargo temperature exceeds a threshold." '686 Patent at 7:8–13. The specification further states that "[i]nitialization essentially requires notifying system 100 what each port is connected to … [f]or instance, the form may ask what each input line is connected to, e.g., line one to an air bag sensor, line two to a battery indicator, etc." *Id.* at 10:21–30. An input line that is connected to the wireless communication unit is not purely a signal, but requires a wired electrical connection. Accordingly, the Court finds that the recited "inputs" include signals provided to the wireless communication unit via a wired electrical connection. To the extent that Plaintiff contends that the "inputs" can be purely signals or data, the Court rejects this argument.

The claim language further indicates that the "inputs" may be monitored by client computers. For example, claims 15 and 48 recite that the inputs are "operable for monitoring by a respective of said plurality of client computers." Similarly, claim 29 recites that the inputs are

"to be monitored."  In this regard, the specification states that "[p]referably, a monitoring system is provided for monitoring a plurality of targets on behalf of a plurality of respective clients in accord with the invention that comprises a computer network server operable for communicating with a plurality of client computers." '686 Patent at 9:34–38.  As an example, the specification states that high capacity clients "may preferably have a direct connection to database 106" that "would allow large clients to monitor, track, and so forth a large number of assets at high speeds." *Id.* at 14:11–14.  Accordingly, consistent with the language in the disputed phrase, the Court finds that the recited "inputs" may be monitored.

Regarding Defendant's construction, the Court is not persuaded that the construction should specify that the inputs must be from the "target" to the communication unit.  Claim 15 recites that the wiring interface is used to selectively wire the "wireless communication units to said plurality of targets."  The claim does not recite that each input is from the "target" to the communication unit.  Likewise, the specification states that "inputs for any particular monitoring device 10 may be different, e.g., if there are one thousand monitoring devices 10 in operation, each device may be configured differently." '686 Patent at 7:1–4.  When the "target" is a vehicle, the specification states that the inputs "may include, for example only, a panic button, air bag deployment, siren, lights, auxiliary signals, cargo door sensor (open/close), or a threshold indicator such as cargo temperature exceeds a threshold." *Id.* at 7:8–13.  Thus, to the extent that Defendant's construction would exclude a sensor used with a vehicle, the Court rejects this construction.  However, as discussed above, the recited "inputs" are signals provided to the wireless communication unit via a wired electrical connection.  Furthermore, the Court has found that the "selectable port wiring interface" provides at least one selected wired electrical connection as part of the wireless communication unit.

Regarding Defendant's requirement that the input "detects an operation or condition of the target and has no effect upon the operation or condition," the Court finds that this language is unwarranted. Defendant's only support for including this language is a single dictionary definition for the word "monitor." (Dkt. No. 44 at 27) (citing *Webster's Encyclopedic Unabridged Dictionary of the English Language* (1989)). Defendant has not pointed to any intrinsic evidence that would indicate that this additional limitation should be read into this phrase. Moreover, the Court finds that this extrinsic evidence is not consistent with the intrinsic evidence. As Plaintiff contends, the intrinsic evidence indicates that the input signal may or may not affect the condition or operation of the target. For example, an input may immediately provoke a response, which may affect the condition or operation of the target. '686 Patent at 3:67-4:2 ("The database also preferably provides information about each target and the definition/response for each target signal."). Accordingly, the Court does not adopt this portion of Defendant's construction.

### c) Court's Construction

In light of the intrinsic and extrinsic evidence, the Court construes the phrase **"inputs to said wireless communication unit are operable for monitoring"** to mean **"signals provided to the wireless communication unit via a wired electrical connection that may be monitored;"** and the phrase **"inputs to be monitored"** to mean **"signals provided to the wireless communication unit via a wired electrical connection that may be monitored."**

### 4. "outputs for said wireless communication unit are operable to controlled" and "outputs to be controlled"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "outputs for said wireless communication unit are operable to be controlled" | "signals or data from the communication unit that may be controlled" | "electrical signal outputs from the communications unit to the target that controls a desired action on the target" |
| "outputs to be controlled" | "signals or data from the communication unit that may be controlled" | "electrical signal outputs from the communications unit to the target that controls a desired action on the target" |

### a) The Parties' Positions

Defendant contends that Plaintiff's construction eliminates physical structure recited in the claim language. Plaintiff contends that Defendant's construction adds limitation to the claims. Plaintiff argues that the phrase "outputs for said wireless communication units are operable to be controlled by said respective of said plurality of client computers" refers to signals originating from the client computer that are sent to the wireless communication unit and that direct some process, which could be a process at the target or within the monitoring unit. (Dkt. No. 39 at 28) (citing '686 Patent at 3:34–37, 6:51–54). Plaintiff contends that the outputs are simply signals from the communication unit that carry control information. (Dkt. No. 39 at 29.) Plaintiff argues that the '686 Patent does not limit the type of control information that may be carried by the signal. (*Id.*)

Regarding Defendant's construction, Plaintiff argues it is too restrictive. (*Id.*) Plaintiff contends that the outputs are signals from the communication unit, but they do not necessarily control an action on the target. (*Id.*) Plaintiff argues that the outputs can potentially control a whole host of things, and the specification explains that the invention is intended to allow virtually unlimited versatility. (*Id.*) (citing '686 Patent at 7:45–49).

Plaintiff further argues that Defendant's construction is inconsistent with claim 51. According to Plaintiff, claim 51 specifically identifies the power to the GPS as one of the outputs to be controlled, which is not "a desired action on the target." (Dkt. No. 39 at 30.) Plaintiff also

argues that claim 51 contemplates sending outputs to control the microprocessor in the monitoring unit, *i.e.*, reprogramming the computer on the monitoring unit. (*Id.*)

Defendant responds that the discussion advanced with respect to term "inputs" equally applies to the construction of term "outputs." (Dkt. No. 44 at 28.) Defendant argues that Plaintiff proposes to substitute "signals or data" for the structural claim element "outputs" referenced in the "introductory" clause. (*Id.*) Defendant contends that this is counter to the claim language, disregards the basis upon which the patentee defined over the Reexamination Suman reference, and obliterates the Examiner's Reasons for Allowance of the *Ex Parte* Reexamination Certificate. (*Id.*)

Defendant further contends that the correct construction recognizes that the configured port wired outputs are structural wired connections from the communications unit to the target. (*Id.*) Defendant argues that its construction again uses an adjectival modifier "electrical signal" to the noun "outputs" as an explanatory stating of the type of structural outputs positively recited in the subject claims. (*Id.*) Defendant also argues that the output "controls a desired action on the target." (*Id.*) Defendant contends that this is supported by the specification, captures the selectively wired output line direction of the claim language at issue, and is consistent with the reexamination history. (*Id.* at 28-29) (citing Dkt. 44-4 at 7-8 (Oct. 20, 2010 Office Action Response), Dkt. 44-3 at 10-11 (Dec. 13, 2010 Notice of Intent to Issue *Ex Parte* Reexamination Certificate)).

For the following reasons, the Court finds that the phrase **"outputs for said wireless communication unit are operable to be controlled"** should be construed to mean **"signals provided from the wireless communication unit via a wired electrical connection that may be controlled."** The Court also finds that the phrase **"outputs to be controlled"** should be

construed to mean **"signals provided from the wireless communication unit via a wired electrical connection that may be controlled."**

### b) Analysis

The phrase "outputs for said wireless communication unit are operable to be controlled" appears in claims 15 and 48 of the '686 Patent.  The Court finds that the phrase is used consistently in the claims and is intended to have the same meaning in each claim.  The phrase "outputs to be controlled" appears in claims 15, 29, and 48 of the '686 Patent.  The Court finds that the phrase is used consistently in the claims and is intended to have the same meaning in each claim.  The parties agree that both phrases should be construed the same.

The Court finds that the intrinsic evidence indicates that the recited "outputs" include signals.  The specification states that "[t]he outputs and inputs are electrical signals that are used with the target and are related to the type of target and may include a wide range of signals." '686 Patent at 9:53–56.  The specification further states that "[a] plurality of inputs to the monitoring device from the target are provided as well as plurality of outputs from the monitoring device to the target. If the target is a vehicle, then the interface communicates electrical signals relating to one or more elements of the vehicle." *Id.* at 2:24–29.  Furthermore, the parties agree that "outputs" include at least electrical signals.  Plaintiff's construction includes "signals or data," and Defendant's construction includes "electrical signal outputs." The parties also agree that "outputs" are from the wireless communication unit.  The Court finds that this is indicated by the claim language, which recites "outputs for said wireless communication unit."  Accordingly, the Court finds that "outputs" are "signals provided from the wireless communication unit."

As with the term "inputs," the parties dispute whether the recited "outputs" include not

only a signal, but also physical structure (*i.e.*, an electrical connection). The Court finds that the intrinsic evidence indicates that the recited "outputs" include a wired electrical connection. Specifically, during the reexamination, the patent owner repeatedly emphasized that the prior art failed to disclose inputs and outputs that are wired and connected to ports. For example, the patent owner argued that "Wooten does not teach configurable ports which are selectively connected to the inputs and outputs." (*Id.*)

The patent owner also argued that the input and outputs include a wired electrical connection by arguing that "[t]he proposed citation from Suman (43:64 -44:16) … for 'installing' inputs and outputs to the monitoring device clearly are not operable for selective wiring for the ports, inputs, and outputs, and do not involve wiring at all." (*Id.* at 31, *see also*, *id.* at 19 ("The proposed citation from Suman (43:64 -44: 16) by Requestor and the Office Action for 'installing' inputs and outputs to the monitoring device clearly are not operable for selective wiring and do not even involve ports or wiring of inputs and outputs to the ports.").

Consistent with the patent owner's arguments, the examiner's reason for allowance stated that "[t]he 'configurable interface' ('686, 7: 1-13; 10: 20-36) between each monitoring device and each monitoring device's associated target comprises ports that are selectable for connection to individually selectable inputs (inputs to monitoring device from target) and individually selectable outputs (outputs from monitoring device to control target)." (Dkt. No. 44-3 at 5, Dec. 13, 2010 Notice of Intent to Issue *Ex Parte* Reexamination Certificate)). Furthermore, consistent with the prosecution history, the claim language itself indicates that the "outputs" include a wired electrical connection. Claims 15 and 48 recite that the "wiring interface" is for "selective wiring" of the targets to the wiring interface.

The specification also indicates that the recited "outputs" include a wired electrical

connection. The specification states that "[m]onitoring device 10 may be used to produce outputs such as door locks, ignition kill, to produce an audible alarm for the driver, or to effect any other feature that can be electrically interfaced to monitoring device 10." '686 Patent at 7:46–49. The specification further states that "[i]nitialization essentially requires notifying system 100 what each port is connected to … the outputs are listed, e.g., output line one to alarm, output line two to door locks, output line three to an engine kill, etc. In this way, system 100 and/or the client can operate each of these items remotely" *Id.* at 10:21–36. An output line that is connected to the wireless communication is not purely a signal, but requires a wired electrical connection. Accordingly, the Court finds that the recited "outputs" include signals provided from the wireless communication unit via a wired electrical connection. To the extent that Plaintiff contends that the "outputs" can be purely signals or data, the Court rejects this argument.

The claim language further indicates that the "outputs" may be controlled by client computers. For example, claims 15 and 48 recite that the outputs are "operable to be controlled by said respective of said plurality of client computers." Similarly, claim 29 recites that the outputs are "to be controlled." In this regard, the specification states that "system 100 can remotely control the outputs," thereby allowing a client "who may be in another country" to "effect a desired output through monitoring device 10." '686 Patent at 7:55–59. As an example, the specification states that "system 100 might send a message that has the effect of unlocking the doors of a vehicle." *Id.* at 11:40–41. Accordingly, consistent with the language recited in the construed phrase, the Court finds that the recited "outputs" may be controlled.

Regarding Defendant's construction, the Court is not persuaded that the construction should specify that the outputs must be from the communication unit to the "target." Claim 15

recites that wiring interface is used to wire the "wireless communication units to said plurality of targets." This is not necessarily the same as requiring the outputs to be from the communication unit to the "target." The specification further states that "[m]onitoring device 10 may be used to produce outputs such as door locks, ignition kill, to produce an audible alarm for the driver, or to effect any other feature that can be electrically interfaced to monitoring device 10." '686 Patent at 7:46–49. Thus, to the extent that Defendant's construction would exclude a feature used with a vehicle, the Court rejects this construction.

Regarding Defendant's requirement that the output "controls a desired action on the target," the Court finds that this language is unwarranted. Defendant contends that this language is supported by the specification and captures the selectively wired output line direction of the claim language at issue. (Dkt. No. 44 at 28.) The Court is not persuaded by Defendant's argument. As Plaintiff contends, the intrinsic evidence indicates that the outputs are signals from the communication unit, but they do not necessarily control an action on the target. For example, claim 51 states that the "one or more outputs to be controlled comprise a power control for said global position sensor, setting a flag in a memory to be operated on by a microcontroller, and controlling said microcontroller to send said location information." Here the claim specifically identifies the power to the GPS as one of the outputs to be controlled. To the extent that Defendant argues that controlling the power to the GPS would not control a desired action on the target, the Court rejects this argument. However, as discussed above, the recited outputs are signals provided from the wireless communication unit via a wired electrical connection. Furthermore, the Court has found that the "selectable port wiring interface" provides at least one selected electrical connection as part of the wireless communication unit.

### c) Court's Construction

In light of the intrinsic and extrinsic evidence, the Court construes the phrase **"outputs for said wireless communication unit are operable to be controlled"** to mean **"signals provided from the wireless communication unit via a wired electrical connection that may be controlled;"** and the phrase **"outputs to be controlled"** to mean **"signals provided from the wireless communication unit via a wired electrical connection that may be controlled."**

5. **"definition information," "definitions of said one or more inputs to be controlled, said one or more outputs to be controlled, and said selective wiring of said selectable port wiring interface," and "definitions of said inputs to be monitored, said outputs to be controlled, and said selective wiring of said selective wiring of said plurality of ports"**

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "definition information" | "information that enables the computer or server to organize, use, and respond to data or signals stored in the database or sent to the server" | "configuration information for each configurable interface on each monitoring device, allowing target-specific dynamic configuration of the monitoring device, the information including selected ports for connections, inputs/variables to be monitored, outputs/items to be controlled, selective wiring interface details for each port, the type of data to/from each port, and actions to be taken based on data from the port" |
| "definitions of said one or more inputs to be controlled, said one or more outputs to be controlled, and said selective wiring of said selectable port wiring interface" | "information that enables the computer or server to organize, use, and respond to data or signals stored in the database or sent to the server regarding the one or more inputs to be controlled, the one or more outputs to be controlled, and the interface with the target or device on the target that is capable of selectively being configured to receive and/or transmit signals or data" | "configuration information for each configurable interface on each monitoring device, allowing target-specific dynamic configuration of the monitoring device, the information including selected ports for connections, inputs/variables to be monitored, outputs/items to be controlled, selective wiring interface details for each port, the type of data to/from each port, and actions to be taken based on data from the port" |

| "definitions of said inputs to be monitored, said outputs to be controlled, and said selective wiring of said selective wiring of said plurality of ports" | "information that enables the computer or server to organize, use, and respond to data or signals stored in the database or sent to the server regarding the one or more outputs to be controlled, the one or more inputs to be controlled, and the interface with the target or device on the target that is capable of selectively being configured to receive and/or transmit signals or data" | "configuration information for each configurable interface on each monitoring device, allowing target-specific dynamic configuration of the monitoring device, the information including selected ports for connections, inputs/variables to be monitored, outputs/items to be controlled, selective wiring interface details for each port, the type of data to/from each port, and actions to be taken based on data from the port" |
|---|---|---|

### a) The Parties' Positions

The parties dispute whether the term "definition information" should be construed broadly as "information that enables the computer or server to organize, use, and respond to data or signals stored in the database or sent to the server," as Plaintiff proposes, or if it should be construed more narrowly, as Defendant proposes. Plaintiff argues that "definition information" has a straightforward and plain meaning. (Dkt. No. 39 at 31.) Plaintiff contends that Defendant's construction proceeds to add on another ten inherently confusing clauses. (*Id.*) Plaintiff argues that Defendant's repeated use of the term "configuration" or "configurable" leads to redundancy and confusion. (*Id.*) Plaintiff also argues that the scope of "definition information" is much broader than information that is used to configure an interface on the monitor. (*Id.* at 32.) Plaintiff contends that the information can be used in myriad of ways to control virtually any component or process of the system. (*Id.*)

Plaintiff further argues that it is unclear what "target-specific dynamic configuration of the monitoring device" means. (*Id.*) Plaintiff also argues that everything after the clause "target-specific dynamic configuration of monitoring device" simply recites examples of ways in which "definition information" may be used. (*Id.*) Plaintiff contends that Defendant's potential examples of how "definition information" is used do not serve to define the term. (*Id.*) Plaintiff

further contends that Defendant attempts to rewrite the claims by limiting them to specific examples. (*Id.* at 33.) Plaintiff argues that claims 15 and 48 identify and describe what is being defined in the database. (*Id.*) Plaintiff also argues that specification describes and provides examples of the types of information, which may be "defined" in the common database. (*Id.* at 33-34) (citing '686 Patent at 2:65–3:2, 12:50–55, 10:20–28, 7:4–8).

Defendant responds that Plaintiff's construction is both counter to the claim language and disregards the examiner's reasons for allowance of the *Ex Parte* Reexamination Certificate. (Dkt. No. 44 at 30.) Defendant argues that a plain reading of claims 15 and 48 indicates that the definition information is related specifically to information regarding the "said" inputs to the controlled (or monitored with respect to claim 29), outputs to be controlled, and selective wiring of the selectable port wiring interface. (*Id.*) Defendant argues that the claims themselves do not suggest the list is open for other definitions; rather, the list is specifically correlated to the previously recited antecedent claim elements. (*Id.*)

Regarding Plaintiff's construction, Defendant argues that it has no basis from the claim language at issue. (*Id.* at 30-31.) Defendant contends that the claims themselves do not explain how the stored definitions "enable" the server to "organize, use, manage, and respond to data stored in the database or signals sent to the server." (*Id.* at 31.) Defendant argues that its construction remains within the scope of the subject patent claims by addressing "configuration information" for each of the claims' previously introduced physical claim elements which are in the list of "definitions." (*Id.*) Defendant also argues that its construction is consistent with the examiner's reasons for allowance of the *Ex Parte* Reexamination Certificate. (*Id.*) (quoting Dkt. 44-3 at 5 (December 13, 2010 Notice of Intent to Issue)). Defendant argues that Plaintiff's construction is inconsistent with the Examiner's reasoning behind issuing the Reexamination

Certificate and defines the subject in a far broader context than anticipated by the examiner. (Dkt. No. 44 at 31.)

Plaintiff replies that the definition information includes the initialization information logged into the database when the monitoring unit is installed. (Dkt. No. 45 at 13) (citing '686 Patent at 10:20–35). Plaintiff contends that this initialization information or definition information can be changed by the client as desired at any time. (*Id.*) (citing '686 Patent at 10:35–36, 12:50). Plaintiff argues that one of the problems is that Defendant has asked the Court to define multiple phrases that contain the term "definitions," rather than seeking construction of just the term "definitions" or "definition information." (*Id.* at 13.) According to Plaintiff, this has resulted in Defendant defining the same term differently and perhaps inconsistently.

For the following reasons, the Court finds that the term **"definition information"** should be construed to mean **"configuration information."** The Court also finds that the phrase **"definitions of said one or more inputs to be controlled, said one or more outputs to be controlled, and said selective wiring of said selectable port wiring interface"** and the phrase **"definitions of said inputs to be monitored, said outputs to be controlled, and said selective wiring of said selective wiring of said plurality of ports"** should be construed to mean **"configuration information that defines at least the relevant inputs, outputs, and the ports that the inputs and outputs are physically connected to."**

### b) Analysis

The term "definition information" appears in claims 15 and 48 of the '686 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same meaning in each claim. The phrase "definitions of said one or more inputs to be controlled, said one or more outputs to be controlled, and said selective wiring of said selectable port wiring

interface" appears in claims 15 and 48 of the '686 Patent, and the phrase "definitions of said inputs to be monitored, said outputs to be controlled, and said selective wiring of said selective wiring of said plurality of ports" appears in claim 29 of the '686 Patent. The Court finds that the phrases are used consistently in the claims and are intended to have the same meaning in each claim.

The claim language indicates that "definition information" is configuration information. For example, claims 15 and 48 recite "definition information for said plurality of wireless communication units comprising definitions of said one or more inputs to be controlled, said one or more outputs to be controlled and said selective wiring of said selectable port wiring interface." Similarly, claim 29 recites "definitions of said inputs to be monitored, said outputs to be controlled and said selective wiring of said plurality of ports." Accordingly, the Court finds that a person of ordinary skill in the art would understand that the recited "definition information" includes configuration information. Indeed, the examiner stated in his reason for allowance that "the 'common database', located at the 'network server' stores, for the one or more 'monitoring devices' and related 'targets' the selectively variable configurations defining the ports, inputs, and outputs." (Dkt. 44-3 at 5 (December 13, 2010 Notice of Intent to Issue *Ex Parte* Reexamination Certificate)).

Regarding the parties' constructions for this term, the Court finds that Plaintiff's construction is overly broad and fails to consider the term in the context of the intrinsic evidence. Plaintiff's construction does not require the "definition information" to include any configuration information. Instead, Plaintiff's construction only requires "information that enables the computer or server to organize, use, and respond to data or signals stored in the database or sent to the server." This could be any information and is not how a person of ordinary skill in the art

would understand the term in the context of the intrinsic evidence.

Defendant's construction is potentially too narrow and introduces a term that is not found in the intrinsic evidence. Defendant does not explain what it means by "target-specific dynamic configuration." This term would introduce ambiguity into the claims and is unnecessary. The remainder of Defendant's construction relates more to the related disputed phrases discussed in more detail below. Accordingly, the Court does not adopt either parties' construction for the term "definition information."

Turning to the phrase "definitions of said one or more inputs to be controlled, said one or more outputs to be controlled, and said selective wiring of said selectable port wiring interface" and the phrase "definitions of said inputs to be monitored, said outputs to be controlled, and said selective wiring of said selective wiring of said plurality of ports," the Court finds that in addition to the claim language, the specification further informs the meaning of the phrase. Specifically, the specification states that "[i]n the database, the information for operation of system 100 with each monitoring unit 10 is stored." '686 Patent at 12:50–52. The specification further states that "for each particular monitoring unit 10, database 106 stores the relevant inputs and outputs, client specifications regarding inputs and outputs, client messages and types of messages in response to signals, and so forth." *Id.* at 12:52–55. Similarly, the specification states that "[i]nitialization essentially requires notifying system 100 what each port is connected to, what the desired response is for any signal from the ports, and whatever requirements the client may have." *Id.* at 10:21–25. Accordingly, the Court finds that a person of ordinary skill in the art would understand these phrases to mean "configuration information defining the relevant inputs, outputs, and the ports that the inputs and outputs are physically connected to." Indeed, the specification states that "[t]he flexibility comes because during initialization of monitoring

device 10, the various inputs 42 and outputs 44 are listed and entered into a database of system 100 where they are defined along with any desired response that a client may wish system 100 to make, e.g., e-mail, telephone call, pager alarm, etc." '686 Patent at 7:4–9.

Regarding the parties' construction for these phrases, the Court finds that each proposed construction includes various aspects of inputs, outputs, and interface. However, the Court finds that its construction is more concise and resolves the claim construction issues before the Court. Accordingly, the Court does not adopt either parties' construction for the disputed term/phrases.

### c)  Court's Construction

In light of the intrinsic and extrinsic evidence, the Court construes the term **"definition information"** to mean **"configuration information."** The Court also construes the phrase **"definitions of said one or more inputs to be controlled, said one or more outputs to be controlled, and said selective wiring of said selectable port wiring interface"** and the phrase **"definitions of said inputs to be monitored, said outputs to be controlled, and said selective wiring of said selective wiring of said plurality of ports"** to mean **"configuration information that defines at least the relevant inputs, outputs, and the ports that the inputs and outputs are physically connected to."**


## V.      CONCLUSION

The Court adopts the above constructions. The parties are ORDERED that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ORDERED to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

Within thirty (30) days of the issuance of this Memorandum Opinion and Order, the parties are hereby ORDERED, in good faith, to mediate this case with the mediator agreed upon by the parties. As a part of such mediation, each party shall appear by counsel and by at least one corporate officer possessing sufficient authority and control to unilaterally make binding decisions for the corporation adequate to address any good faith offer or counteroffer of settlement that might arise during such mediation. Failure to do so shall be deemed by the Court as a failure to mediate in good faith and may subject that party to such sanctions as the Court deems appropriate.

**So Ordered and Signed on this**

**Jun 18, 2015**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE